Thank you, Your Honor. May it please the Court... How long have you been doing this? I'm sorry? How long have you been doing this? I've been doing this since 1974, Your Honor. Well, I got a few years on you. Not too many. Good to see you. May it please the Court, Counsel, Miranda warnings in this case were defective because they did not convey to the defendant that if he could not afford an attorney, one would be appointed for him at no cost. We know this because the certified court interpreter testified that the agent mistranslated the Spanish word libra, used the Spanish word libra, L-I-B-R-E, to convey the English free or at no cost, when in fact he should have used, according to the interpreter, words like sin costos or gratis, which would be familiar to both speakers. Mr. Levine, since we don't have a whole lot of time, I wonder if I could be sure we're all on the same page about the facts here. Sure. I think we're all operating off the Court's ruling and, of course, the transcript of the hearing that occurred on September 16th. Is that correct? And I think we all agree that nobody knows exactly what Detective Salas set out in the field. We only know, right, there was no recording. No recording. No recording. He said it could have been a little different on that day. Yes. He did testify that the essence of each right had been indicated. So we have Detective Salas was asked by the defense lawyer to state. That was me. That was you. Okay. Well, you know exactly then exactly what he said. Yes. Which he did. Yes. And then you called Terry Rogers, who's a certified Spanish translator. Yes. She indicated that she made two notes about what he said, libre, which you talked about in the issue of the Court. But she also acknowledged that in his in-court translation he included the phrase, if you do not have funds to pay, you can have an attorney libre. Right. Okay. So any ambiguity about what was free is at least qualified to that extent. She also said she didn't remember the precise words that he used. She did not take notes of his full translation. And she would need a transcript to know what happened. But, of course, the court reporter didn't speak Spanish, so there is no such transcript. That's true. So the entire case comes out of what happened at this hearing and how the parties viewed it. I speak Spanish. And when I looked at this, initially I thought, eh, libre, one of the meanings of libre, and it's one of the primary uses, is free, without cost, sin costo. I realize there are other versions of it, and you have the official translator there. But the reality is the concept, the essence is if you don't have your own money to buy one, to pay for a lawyer, then it will be provided to you without cost. Would you agree that since she said that Detective Salas said, if you do not have funds to pay, you can have an attorney libre, do you agree with that? I agree that's what she said, but that's not what she said it meant. She's the certified Spanish interpreter with all due respect to the court. No, no, no. She said what the word libre meant. Yes. She didn't talk about the impact of the earlier statement, did she? I disagree with you, Your Honor. If the court will take a look at page, excerpt of Record 82 or the transcript, page 66, this is the essence of the case, questioned by me. So if I understand, and I'm speaking to Rogers. So if I understand you correctly, what you're saying is that Agent Salas did not tell the defendant that if he could not afford a lawyer, he could have one at no cost. Answer, that's my testimony. So she is testifying that, no, that the agent did not convey to the defendant that if he could not afford a lawyer, he could have one at no cost. But later she acknowledged that she had not made reference to the, if you don't have funds to pay, you can have an attorney, right? So at most we have confusion in what she testified. Does that agree? But confusion is defective, is defective Miranda warnings. We have a long line of cases in the Ninth Circuit. It's very simple, the Miranda warnings. I mean, they've been done thousands of times, and they should be done, as Judge Kosinski pointed out in Judy v. Ryan. It's straightforward. But they were defective here. It's not enough to give confusing warnings, ambiguous warnings. Do we know that? Do you think that at the border they would at least have the warnings in Spanish? One would think so. And a waiver in Spanish. Absolutely. How that was done. This is done hundreds of thousands of times all across the country. People take out a little card and read it in English and in Spanish. Here we have the detective on the witness stand. And notice I said very slowly. If you read the record, we took him through the Miranda warnings very slowly. And what did Terry Rogers testify to? It was remarkable. I was surprised, is the record, when he used the word Libra. Now, she is the certified federal interpreter. We can't go by what I understand Spanish, with due respect, Your Honor, you understand Spanish. You're not a federally certified interpreter. Correct. She goes through the exams. So this is the record. And the case law in the Ninth Circuit is clear that if the warnings are ambiguous or misleading in some way. Was the English warning ambiguous? No. The English warning was good. He did indicate that he understood. Well. He understands English. He doesn't speak it. No, no. I disagree with the Court. That's not the record. And I think the District Court judge got the record wrong. Let me read. If I may on that subject, I just want to interject. The District Court did make a finding that based on Mr. Botelho's long-term residence in the U.S. and his own observations about his apparent language, understanding English language, understand that Mr. Botelho was proficient in English. Tell me what facts show that that's clear error. Okay. First of all, the agents never testified that he understood English. The agents interviewed him in the field with translating through Spanish. Why would they do this if he understood English? And he was cooperative. He talked. He talked so he wasn't hiding. If he understood English, he would have spoken in English. But, counsel, you're not answering Judge Wardlaw's question. In the transcript, the court said, so you speak some English. He said, not clearly I can't speak, but I do understand. And he lived in the United States at that point for 16 years. Your Honor, my grandmother lived in the United States for 15 years from Russia. She couldn't speak a word of English. It doesn't matter how long you live in the United States. Well, if we're going to talk anecdotally, I have family, extended family members who have lived in the United States almost their whole life, and they don't speak English. Exactly my point, Your Honor. But further facts are he had an interpreter in court at the appropriate proceedings, and the record says at excerpt of record 94, he said he understood some English but not much. That's the testimony. And the district court based its finding on the fact, part of the finding on the fact, that he would start to answer questions when, but that doesn't prove a thing. But, Mr. Levine, there was more. The court asked the court whether he knew his Miranda rights, and he said, and the court said, and you know what your Miranda rights are, and he said yes. He'd also been arrested or convicted three times before when presumably in each instance. Once. No, no, three times. I'll read them to you. I'll take your word for it. In any event, and he served jail time as well, he was Mirandized in each of those situations presumably. Well, but that doesn't mean he understood the Miranda warnings, and his statement in context here is. Well, is that the standard, whether he understood? I don't think whether he understood the warning. First of all, in my view, if the warnings are defective, it doesn't matter what, and I think the government virtually concedes that in its brief at note four. If the warnings are defective, it doesn't matter what was understood or what the defendant thought. If he understands English, and nobody questions that the English was read right off a card, does that take care of it? I don't agree with your premise. He doesn't understand English. But that's what he said he did. He said he did understand. He didn't say he said he understood some English. I understand that, but he understood his Miranda rights. Well, he said he understood his Miranda rights, but when did he understand them? At the time he said, I understand my Miranda rights, Your Honor, the Miranda warnings had been repeated slowly three times in court in English and in Spanish. The question was asked. Then he testified. He was asked, do you understand your Miranda warnings? Well, after having heard them correctly in English, then properly translated, what does that mean? Now I understand my Miranda warnings. But what is the standard? Is the standard does the defendant understand the Miranda warnings? Is that the standard? No, no. Okay, what is the standard? That someone correctly convey to him what his four basic rights are under Miranda. Yes. That was done in English. It was also done in Spanish. In correct Spanish. Arguably. Well, that's your understanding of it. Well, that's the interpreter. No, that's the interpreter. The interpreter fell back big time when she was questioned by the government. She said she didn't remember exactly what he said. She had a couple of notes. Then she recalled that he had said that if you can't afford a lawyer, you can have an attorney libre. Well, but she said that was remarkable and surprised her because it was wrong. It was a wrong translation. It does not convey at no cost. That's the record. And what is the Florida case that Justice Ginsburg wrote say about that? I'm sorry? What would the Florida case that Justice Ginsburg wrote say about that concept? I'm sorry? It's Florida versus Powell. Decided 2010. Yes. By the Supreme Court. Yes. Well, Justice Ginsburg dealt with a similar kind of a situation in Florida. Florida Supreme Court reversed. And she said, no, no, no, that's not correct. I don't have the facts, the key facts of that case at the top of my memory. But I can assure the court that it did not concern a federally court, a federal interpreter saying that this was a mistranslation of a key Spanish, a key point. And this is a key point in the Miranda warnings. So it's catch the constable, right? I'm sorry? It's catch the constable. Let's see if we can get the cops to make a little mistake and then let's free them. That's complying with the law of the Supreme Court and of the United States. That's what I'm talking about. The Florida, Powell versus Florida. I'm sorry, Your Honor, if the court could give me the key statement in Powell because I disagree with the court. What was said in Powell? Well, I think in this case you're the one supposed to answer the question. Well, I'm sorry, Your Honor. I can be helpful. I can be helpful here. She said a couple times, at one point she said the third warning, which is one issue in both cases, is that as an absolute prerequisite to interrogation, an individual held for questioning must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation. And we have, in our Ninth Circuit decisions, said he must be clearly informed. I can almost reveal a quote from a recent Ninth Circuit case. The indigent and the unlearned must be given the warning in language that is adequate to clearly convey to them that if they cannot afford an attorney, one will be provided. The government will pay for them to have an attorney. One will be provided to them at no cost. And that's the standard. I agree completely with the court. And that was not in Florida. That particular issue of providing, telling someone that an attorney would be provided at no cost, I'm certain was not an issue in Florida. No, it was a different prong, but the point was it was that the concept was conveyed. And my concern here is that when you add the words, if you don't have funds to pay, you can have an attorney. Libre is not confusing, not at all. The interpreter disagrees with you. The federally certified interpreter says it is not conveyed. Is that the standard we go on? Well, I don't know. That's a pretty powerful statement, Your Honor, from someone who's sworn to understand English and Spanish and who translates every day and countless clients. And who also said that she didn't remember each of the precise words that he used, that she took no notes other than with respect to those two little things, and that she really wasn't exactly certain what he said. Well, except with respect to the Libre. For that she said it was remarkable and surprising. That she noted. And also we have the second aspect of this case. The second defect is telling the defendant that anything he said could be used against him in law. Now, the government cited the case where the court said, upheld a warning where they said it was okay to say anything you say can be used against you, period. Well, that's fine. That's not misleading. You don't have to say used against you in court because it's reasonable to infer that if something can be used against you, it can be used against you anywhere. But to say to someone it can be used against you in law, what does that mean? To a Spanish speaker. I don't know. What does it mean? It's misleading because it implies, well, it can be used against you in law. Well, maybe they're in law. It may not be used against you under some law, and some law it will be. So there's a double defect in these warnings. And the combination, or taken together or alone, render these warnings defective. And the judge's ruling that he understood the English warnings is clearly erroneous. You're an able advocate, Mr. Levine. Good morning, and may it please the Court. Kelly Zusman appearing on behalf of the United States. I want to start with the proposition that everyone accepts, and that is that the English Miranda warnings here were adequate. And Judge Redden, at page three of his opinion. Did he take a waiver? I'm sorry? Was a waiver taken? A waiver taken? A waiver, yes. Signed? Oh, no. It was signed. There was no signed waiver. There was no waiver form. Signed waiver. No. What we have there, there. I'm saying a form. Right. Sometimes they have a form. Now that we've informed you of your rights, we waive those rights. And then you initiate, initials that. And at the border, certainly they have the form written in English, and they have the form written in Spanish, and they have the defendant sign both. There was no form here. Mr. Botello was not given a form that he signed. Now the district court found that, in fact, the district court made a finding, in fact, that Salas used the word libre. Isn't that correct? He acknowledged that Terry Rogers testified to that, yes. And we don't dispute that. Okay. That's what I'm going to. We don't dispute he used the word libre. Correct. I think what we have here is a problem of Spanglish. I don't know if you know what I'm talking about. I do. Okay. And I'm familiar with that problem. I'm also, having been raised by mothers of Spanish, I have problems sometimes speaking English with the correct idioms. It's just one of those things that I'm weak at. And I have a real concern here with someone like me, like your law enforcement officer, who thinks he can speak Spanish because his mother is Mexican American, his family is Mexican American, he's Mexican American, but he grows up in the United States speaking English and taking Spanish as a second language, which I did, dealing with language like this. And I'm also very concerned with your brief, because you cite the 2005 Pocket Oxford Spanish Dictionary for the proposition that libre can be without cost. But we've looked at the 2009 edition, and it does not contain that definition. We've also looked at six other Spanish-English dictionaries, and none contain any free of charge meanings for libre. So what I'd like to know is can you give anything else that is an official Spanish dictionary or English-Spanish translation dictionary that uses libre for free of charge? I don't have any other dictionary citations for the court. You're relying on someone who isn't certified to speak Spanish, who in fact doesn't speak Spanish in this ordinary day, to give adequate Miranda warnings to suspects who are definitely more fluent in Spanish than in English. And Detective Salas testified that he is a native Spanish speaker, that in fact English is his second language. He's not a native Spanish speaker. I'm sorry? He's not a native Spanish speaker. Well, he testified that Spanish is his primary language and that English, in fact, was his second language. I don't know how we're going to roll on this case, but if I were you, I would advise your client that he should, if they think the most appropriate way to adequately convey Miranda warnings in English to English-speaking people is by reading it directly from a card, they ought to be doing the same thing for Spanish-speaking people. And there was no card here. There's nothing in the record to indicate why there wasn't a card here. But I would turn to what the Supreme Court said in Florida v. Powell, which is that... You know, you see, here's what bothers me about this. I mean, here we are, we're spending all this time, we're having all this discussion, and it would be such an easy thing to comply with Miranda. Do you agree with me? It's easy to comply with her. You think it's hard to comply with? You know, I started out my career as a judge in the municipal court in Los Angeles in 1965 and 1966 when Miranda came out, and the police were having a lot of problems with giving adequate Miranda warnings. So a guy in Reno was selling laminated cards with the warning and the waiver for 10 cents. So I sent him $10, and I got hundreds of those cards, and I passed them out. And they turned out to be a very effective law enforcement tool. The police that I spoke to that I got to know because I was part of that community. So it's a very simple thing. Judge Pregerson has been able to augment his income substantially over the years selling those cards. And I've reported all of my losses to the Internal Revenue Service. We appreciate that. I've never seen a reduction of $10. So it's easy. But, you know, there's kind of at the border this sort of a lack of care. It doesn't matter. It's just like they don't report to the counsel general when our laws tell them they need to do that. I can understand why. But here it's just sloppy work. It's so easy to correct. Now, don't we want our law enforcement people to at least do a decent job? Why do we have to spend all this time? To me it just shows that they're... And, you know, I've taken waivers of constitutional rights from people. And I grew up in East L.A. So in Spanish I understand. But, you know, I know about the cost and the cost of all that. Maybe my accent isn't too clear. But anyway, it's such a simple thing just to comply with. But this is kind of a, oh, you know, it doesn't matter. There's contempt for it. And that's what bothers me. These are constitutional rights you're giving to people. You're not telling them a joke. And if I may respond, no one took this lightly. And I don't disagree with the basic... I don't believe that. And this fellow here, he just rushed through it. And then he went to take any notes. He didn't even have his card with him. He didn't have him sign a piece of paper that he understood his rights. We have all those forms. And why do we have them? To avoid something like this. Does the Supreme Court require any of those things? No. Does not, does it? The Supreme Court doesn't understand what's going on in the legal world. Well, I think Judge Redden does. And I think the trial judge who heard the testimony from Detective... Judge Redden. He was the trial judge? He was the one who heard Detective Salas testify. And Detective Salas, you may consider it sloppy from your point of view. But Judge Redden did not. Detective Salas, at the very beginning of his interaction with Mr. Patello... Do you consider that that officer did a good job in advising Mr. Fennell of his Miranda warnings? Yes, I do. Who? I do. As did Judge Redden. Judge Redden found... I'm not asking you about Judge Redden. I'm asking about you. I'm answering for myself as well. Detective Salas did an appropriate professional job in advising Mr. Patello of all of the four key elements of his Miranda warnings, as required by Florida v. Powell. He conveyed each and every one of the essential elements of Miranda. That he had the right to refuse to answer questions. That he had the right to remain silent. That anything that he said could be used against him. Did he get a waiver from him? Yes, he did. What was it? It was a verbal waiver. And Mr. Patello agreed to speak. What did he say? Mr. Patello agreed to talk. And he, in fact, did then. Did he say, now that I've given you your rights... Did Mr. Patello say, yes... Did all that come into play? He didn't sign a waiver form, nor did he specifically say, yes, I waive my Miranda rights. Well, that's what I asked you. You said, yes. What you're telling me is a waiver by implication because he started talking. A waiver by action. That after being given his rights in both English and Spanish, he then agreed to talk to the officers. And we know that he was, it's in the record, he was arrested in January of the same year, was given his Miranda rights, and he, in fact, invoked them. And did, in fact, remain silent at that time. Did we know anything about whether he was given them properly in Spanish and in English at that arrest? No, there was nothing in the record to indicate that he ever challenged. And plus, he was never fully... Isn't that statement kind of irrelevant? Because we don't know what, you know, perhaps, I mean, we can speculate. Maybe he was given the Miranda rights correctly that time and made a determination to waive them. A knowing and voluntary determination to waive them. We could sit here and speculate all day about that. I see that I'm out of time. May I answer? Oh, sure. Thank you. And I would agree with you that for the purpose of the adequacy of the Miranda warnings, no. But certainly when Judge Redden made the additional determination that he sufficiently understood English and sufficiently understood his Miranda warnings, yes. It supports that proposition. It supports Judge Redden's factual argument. But, you know, there's no basis. There's no basis for making that finding. You saw him in court once on the stand. And, I mean, I don't know how, what supports that finding at all. What supports Judge Redden? How does he know? Right. How does he know how proficient the defendant is? Judge Redden? Yes. He knows because the defendant has lived in the country for 16 years. The defendant said he understood English. That's evidence to support the district court's conclusion. The defendant has some questions. I think we're over time, so I just have one more important question to ask you. Because I can read what Judge Redden said. So let me just ask you this. If we were to find that the Spanish language warning was not valid, does the English language warning that was also given have any significance after San Juan Cruz? And I think the answer is yes, if you accept Judge Redden's fact finding that the defendant sufficiently understood English, that that English warning was effective. And I would note that the English warning, which has not been challenged here, says if you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning. It says nothing about free of cost, no cost, gratis, or anything else. Before you sit down, you know, we can ask you the questions. San Juan Cruz involved a situation where there was an administrative regulation that gave direct contrary information to what was contained in the Miranda warning. Isn't that correct? Right. So it's not an analogous situation here at all. You had two directly contradictory understood warnings, but they were contradictory. And that's what the court was going on. Here we have a situation where there's nothing contradictory. It's a question of whether it was properly given in the first place. But it's not against anything else. Isn't that a correct understanding of the San Juan Cruz case? Yes, Your Honor, I would agree with that. And particularly where in this case you've got at best you have someone who is a certified corporate interpreter. She was not an expert. She was not in the courtroom for the purpose of analyzing the adequacy of Detective Salas' testimony. Well, what do you think a certified courtroom interpreter is? She's there for the purpose of translating for the defendant. But she's not taking notes. She's not writing everything down. And when she's asked to try and recall, she can only recall bits and pieces, things that she actually specifically noted. But ultimately, I acknowledge the burden was on us to establish that the Miranda warnings were adequately given. And Detective Salas' testimony fully satisfied that standard. He adequately conveyed the key essential elements of Miranda as identified by Florida v. Powell. Unless there are any further questions, I would submit. Those certified translators, they go through examinations. There's a whole process of certification. And I'm not questioning Ms. Rogers' ability to translate for a defendant. But the point is she is in the process of speaking to the defendant. That's primarily what she's doing there. She is listening and she is speaking. She's not writing down every word that the detective said. So when she was put on the stand and put in a very awkward position. He was put in the awkward position because he didn't do it right. You know, it's very simple. You've got the warning there. You give it to him in English. You give it to him in Spanish. You have him sign a waiver. You know, it's all there. It only takes a couple minutes. But there's this sort of lackadaisical attitude about this. Some feel that way. And again, Judge Redden didn't find that. And he found that they took their time. There was no pressure. There was no rush. They were in a car. They were in the process of executing a search warrant. They had a number of individuals there they were interviewing. There were a whole host of circumstances. And your complaint about Detective Salas being sloppy, I have to say at the very outset, before they engaged in any questioning, any type of interrogation, he told the defendant, Now, if you have any problem at all understanding anything that I've said, stop me. We'll take a pause, and I'll make sure that you understand. And that's in the transcript. That's at page 45 to 46. So that's not sloppy. That's not trying to hoodwink Mr. Botello. Why didn't he have that paper with him? Why didn't he have that evaluation? Why didn't he have the transcript? Isn't that part of what he's supposed to be doing? There is no requirement in the law that the officers use a card or that they use any particular magic words or that they use a form. Don't officers use those cards? I'm sorry? Don't officers use those cards? Many officers do, but there's nothing in the law or the Constitution that requires it. Indeed, the Supreme Court said there's no talismanic words required. Isn't that correct? Exactly. Unless there's anything further I would submit. Nothing requires it, but we see why we need these printed cards, and we see why we need proper format for these warnings. We have here the interpreter saying it was remarkable and surprising that he used the word Libra. Now, the court said it had Spanish, but we know from Judge Wardlaw who said, and we can take judicial notice, she's looked at six Spanish dictionaries and confirmed that Libra does not mean at no cost. So we have this officer shooting from the hip, essentially, reading without a card, because he's done the Miranda warnings probably thousands of times, but he's done them wrong a thousand times. Counselor, you're a wonderful lawyer. I admire your skill. But the question here is whether Officer Salas properly conveyed the main point, and by including the words, if you do not have funds to pay, you can have an attorney libre. What we have to decide is whether someone who understands English... Some English. What? Who understands some English. Okay, some English, who has been Mirandized several times before, lived in the United States for 16 years, has heard plenty of Spanglish, whether enough was conveyed to him to understand that right. That's our chore. I agree. That's our chore. I agree. You're a fine lawyer. You advocate your client's position correctly. This is not a Spanish exam. That's not what the law requires. The court has made very clear that there's no talismanic phrase involved. The question is, was this concept properly conveyed to him? That's our chore. The answer is no. By your lights, that's correct, and you may be correct, but that's what the three of us have to decide in perhaps an en banc court after that. Who knows? Very well. Thank you very much. Thank you. The matter is submitted.
judges: Pregerson, Wardlaw, M Smith, Cjj